SOBEY and others vs. THOMAS and another.

EVIDENCE. *(1) Rule as to positive and negative evidence, when inapplicable.*
MINING LEASES. *(2, 3) Lease of exclusive right to work a certain range, construed. (4) Mining statutes construed, and held inapplicable where rights are defined by contract.*

1. The rule in respect to the relative value of positive and negative testimony is inapplicable to the case where one party to a verbal lease testifies that it did, and the other that it did not, contain a certain grant.
2. A mining lease of an exclusive right to mine upon the "Watkins range or works" on the lessor's land, *held* to convey a right not only to mine on the said range as far as it had been actualy. opened and worked, but also to follow it to the limits of said land.
3. Such lease, however, did not convey the exclusive right to work a vein on another portion of said tract, between which and the former no connection exists *within the said tract*, although, since the lease, a connection between them has been traced, by a circuitous course, through adjoining land of another person; and this conclusion is not affected by the fact that the ores in the "Watkins range" are in a horizontal seam.
4. The statutes governing the rights of miners (ch. 260 of 1860, and ch. 117 of 1872) apply only where there is no contract fixing the rights of the parties; and sec. 3 of the earlier act (as amended by sec. 2 of the later) gives the lessees in this case no right not included in their lease as here construed.

APPEAL from the Circuit Court for *Iowa* County.

Action to restrain defendants from digging and mining on premises described in the complaint. The complaint alleged, in substance, that N. W. Dean was the owner of a certain quarter-quarter section of land, on which there was a valuable range of lead and zinc ores, known as the Watkins range; that Dean, by his agent Reese, had granted to the assignors of the plaintiffs an oral lease " to mine and dig for lead and zinc ore, according to mining usages, upon any and every part of so much of the said quarter-quarter section as lies north of a line running east and west across the same so far south as to embrace the said Watkins range;" that while plaintiffs were in peaceable possession of said premises, defendants had entered

and commenced mining thereon, and were continuing to dig and carry away ores therefrom, which ores formed a part of the range worked by plaintiffs. The answer, in substance, denied that plaintiffs, by their lease, had the exclusive right to mine upon said land or any part thereof, outside of the said Watkins range proper; denied that the "discovery made by the defendants, or the ores therein contained, are or is connected with the range of the plaintiffs;" admitted that defendants were mining upon the quarter-quarter section described in the complaint; but alleged that they had made an entirely new and independent discovery, etc.

The evidence as to the terms of the lease to the assignors of the plaintiffs was conflicting, William Owens testifying that Reese leased Watkins' range and also that portion north of the range as far north as Evan Williams' land; while Reese testified that he only leased Watkins' range, and that nothing was said about the land north to the line. It appeared that the quarter-quarter section described in the complaint was bounded on the east by the land of Hugh Jones, and on the north by the land of Evan Williams; that the Watkins range had been abandoned and unworked for many years up to the time of the lease by Reese; that striking the west line of the forty acre tract a little north of the middle thereof, it extended across the tract in a southeasterly direction, and had formerly been worked to within about 300 feet of the east line; that it was a "flat opening," that is, the seam containing the ores was nearly horizontal, and its width unascertained, varying from a few feet in some places to several hundred in others; that the location of defendants' shaft was upon and near the northeast corner of the forty-acre tract, and about forty-nine rods north of the point at which the range was supposed to cross the east line of the forty; that shafts had been sunk and ores found and worked to a considerable extent on the land of Hugh Jones, extending in a northeasterly, and thence in a northwesterly direction, and towards the shafts of the defend-

ants. Much testimony was introduced upon the question whether the defendants' diggings were connected with and a part of the Watkins range, and the evidence upon this issue was conflicting.

The court submitted to the jury the following questions: 1. "Is the point of land at which the defendants were working, as described in the complaint, included within the terms of the lease made by N. W. Dean by his agent Reese, to the assignors of the plaintiffs, or to the plaintiffs themselves, independent of the question whether it is the same range as that known as the Watkins range?" 2. "Is the range of ores at the point of land at which the defendants were working, as described in the complaint, the same range of ores leased to the assignors of the plaintiffs, known as the Watkins range?"

It was admitted in open court that when the lease was made by Reese, the range on Dean's land was not worked by any one, and that Dean was the only person having any title thereto; and that before that time, the range on Hugh Jones' land, which the plaintiffs claim to be a continuation of the Watkins range, was discovered by miners, and that the same was worked upon by Jones or his lessees before, at and since the time of Reese's lease to the plaintiffs. Thereupon the court also submitted to the jury the following question: 3. "The foregoing facts being admitted, does the lease of the Watkins range to the plaintiffs entitle them to the diggings and mineral struck by the defendants?"

The jury answered the second question affirmatively, and the other two negatively. The judge adopted these answers in his findings of fact; and held, that the discovery of the range or vein of ore on Jones' land, made while the Watkins range was abandoned and unworked, was, as against any miner, subsequently on the old Watkins range, a prior discovery of that vein, and entitled the discoverers to follow the vein to the limits of the land on which such discovery was made, unless

restricted by some contract with the owner of the land; that such discovery " cut off the Watkins range and terminated the rights of any subsequent lessees of that range; " and that,. in the absence of any proof of a mining custom to the contrary, a lease of the Watkins range, without a special provision for that purpose, did not confer on the lessees the right to mine upon such vein in case it should be found to run back upon the Dean land.

Judgment for the defendants; from which plaintiffs appealed.

*Moses M. Strong* and *M. M. Cothren*, for appellants, reviewed the testimony at length, and contended that the lease covered all that part of the forty north of the Watkins range, and that so far as the testimony of William Owens on that subject was in conflict with that of Reese, it was subject to the rule as to positive and negative testimony (*Ralph v. C. & N. W. R'y Co.*, 32 Wis., 177); and that the point at which defendants were mining was in the Watkins range, and the ores dug by them pertained to and formed a part thereof. They also criticised the theory of the circuit judge that the plaintiffs' rights had been restricted by a prior discovery on Jones' land, arguing, 1. That though the statute (sec. 3, ch. 260 of 1862, amended by sec. 2, ch. 117 of 1870) does not in terms restrict the right of a discoverer there provided for to the land owned by his landlord on whose premises the discovery is made, yet this restriction is necessarily implied, since an attempt to confer by statute such a right within the land of another owner would be invalid. 2. That no such right could be claimed here, founded upon mining usage or custom. There is no proof in the case of any such usage or custom. The court will not take judicial notice of a local custom or usage. It must be proven to have existed from time immemorial; to have continued without interruption; to have been peaceably acquiesced in; and to be reasonable, certain and consistent with law and the constitution. 1 Black. Com., 76–78; Greenl. Ev., § 250; 2 Phil.

Ev., 728; *Power v. Kane*, 5 Wis., 265.; *Hall v. Storrs*, 7 id., 253.

*Wm. E. Carter*, for respondents, contended upon the evidence that there was no established connection in fact between the vein worked by plaintiffs and that worked by defendants; that no part of the Dean forty was leased to plaintiffs' assignors except the "Watkins range or works;" and that both the lessor and lessees understood by this description that part of the vein on which Watkins & Co. had worked, and did not intend to include any part of the vein outside of the limits of those workings. However the fact might be as to the latter point, counsel insisted: 1. That the law of the case was correctly stated by the circuit court; that if the Dean forty and the Hugh Jones forty adjoining it on the east had both been owned by the same person, the discovery of the vein on the latter forty while the Watkins range or works were abandoned, and the absolute property of the landlord, such discovery being under a license from the landlord, it would have been, as between the discoverer and the landlord, a *new* discovery, and would entitle the discoverer (in the absence of any contract restricting his rights) to all the ores pertaining to the vein, under ch. 260 of 1860 as amended by ch. 117 of 1872; that the only effect of the several ownership of the two forties upon this result was to limit the rights of the new discoverer to that part of the vein which was within the Hugh Jones forty, and prevent his pursuing the vein over on to the Dean forty without Mr. Dean's license; but that the discovery was none the less a prior discovery, and barred a subsequent lessee from Dean of the old Watkins works or range from following the vein into, through or beyond such discovery. 2. That, independently of the question of *prior* discovery, when one discovers a vein or range of ores in pursuance of the statute, or purchases or leases such a vein or discovery, from the discoverer or the landlord, and pursues his vein to the limits of the land on which he has permission to mine, if such vein or

range passes entirely off such land into the land of another owner, where he has no permission to follow, he has no claim beyond that point.    He can claim only ores which are directly connected with the discovery without break or gap.    Any other view would lead to absurd consequences; since the question whether the same vein returns to his landlord's tract of land at some remote spot, after passing through the land of others, can never be decided except at the sovereign pleasure of those other land owners.    3. If, as is claimed by plaintiffs, it was intended by the parties to the lease to give the lessees a right to mine at the place where defendants' mine is, it was a grant of something separate and distinct from the Watkins range, works or mine.    But it is clear that such a grant of a mine, opened or unopened, distinct, separate and entirely cut off from the Watkins mine, would have been, at least until possession of it was taken, a mere license, and revocable at pleasure by the landlord.  2 Rolle, 152; 2 Chand., 117; 29 Wis., 511;  *Clute v. Carr*, 20 id. 531;  *Hanley v. Wood*, 2 B. & A., 724;  4 East, 460;  1 Smith, 278;  4 M. & W., 538;  *Wood v. Ledbitter*, 13 id., 838;  22 Wis., 550;  1 Washb. R. P., 543; Angell on W. C., §§ 286, 287, 293, 295.  Again, if the defendants' mine was intended to be *included in the lease*, it was a lease of an unopened mine, and would not pass to the lessees the right to open this mine.  *Astry v. Ballard*, 2 Mod., 193;  1 Saund., 323;  2 id., 259;  1 Washb. R. P., 412. A license to mine in another's land does not confer an exclusive right of property in the ores found therein.  *Upton v. Brazier*, 17 Iowa, 153;  19 Ind., 14;  1 Washb. R. P., 549;  2 Am. Lead. Cas., 682;  *Hanley v. Wood*, 2 B. & A., 724.    The act of 1860 cannot help the plaintiffs, for the reason that they have never made or "struck" any discovery or prospect, as well as for the reason that if their diggings on the Watkins range were a "discovery," the ores at defendants' mine would not "pertain" to such discovery.    If the so-called "lease" from Reese was a license only, it conveyed no interest in the lands,

and was revocable at pleasure. 1 Washb. R. P., 543; 34 N. Y., 20; 3 Vroom, 225; *French v. Owen*, 2 Wis., 250; *Wood v. Ledbitter*, 12 M. & W., 838. An interest in lands could only be created by deed, unless it was a lease for a term not exceeding one year. Sec. 6, ch. 106, R. S. But the term "lease," there used, does not include grants of or rights to mines. They are incorporeal hereditaments. They are really a sale of a portion of the land. *Gowan v. Christie*, L. R., 2 Scotch Appeals, 282; *S. C.*, 5 Eng. R., 123; *Stoughton v. Leigh*, 1 Taunt., 402; *Merritt v. Judd*, 14 Cal., 64; *Watts v. White*, 13 id., 321; *McCarron v. McConnell*, 7 id., 152; 31 Pa. St., 478; 53 id., 287; 35 id., 292; 38 Mo., 588; *Wilkinson v. Proud*, 11 M. & W., 33; *Gillett v. Treganza*, 6 Wis., 344; 2 Washb. R. P., 347; Bainbridge on Mines, 117, 261. Such an interest in lands cannot be created by parol; and an attempt to so create it amounts to a mere license, revocable at pleasure. *Duinneen v. Rich*, 22 Wis., 550; Bainbridge on Mines, 117; Angell on W. C., §§ 168–173, 295, 296; 2 Washb. R. P., 347; *Wood v. Ledbitter, supra; Ruffey v. Henderson*, 16 Jur., 84; *Adams v. Andrews*, 15 Q. B., 284; *Williams v. Morris*, 8 M. & W., 488; 2 Sug. on Vend. & Pur., 100; *Babcock v. Sutter*, 1 Keyes, 397; *French v. Owen*, 2 Wis., 250; *Fryer v. Warne*, 29 id., 511; *Clute v. Carr*, 20 id., 531; *Cocker v. Cowper*, 1 Cromp. Mees. & R., 418; *Fentiman v. Smith*, 4 East, 107; *Taplin v. Florence*, 3 Eng. Law & Eq., 520; 1 Gill & Johns., 366; 11 Mass., 533; 15 Wend., 380; 6 Hill, 61; 17 Conn., 402; 13 Vt., 150; 4 Sandf. Ch., 72; 9 Johns., 35; 18 Barb., 347; 5 id., 379, 550; 10 id., 333; 3 Duer, 255; 3 Dev. (N. C.), 389; 1 Strob. (S. C.), 36; 11 Ill., 157; 14 id., 464; 4 Foster, 176; 23 Conn., 214; 6 Md., 20; 4 R. I., 47; 25 Conn., 239; 24 Georgia, 179; 47 Pa. St., 329; 38 Mo., 588; 46 N. H., 505; 11 Allen, 141; 54 Mo., 426; 22 Mich., 439; 47 N. H., 383; 15 Gray, 441; 12 Allen, 457; 3 Hurl. & Colt., 256.

COLE, J.    The material question in this case is: What rights and privileges were embraced in the verbal lease which was made by Reese, the agent of Dean, with the assignors of the plaintiffs? It was alleged in the complaint, and testimony was offered in support of the averment, that the lease gave the plaintiffs the right to mine not only upon what was known as the Watkins range or works, but also upon any and every part of the forty-acre tract north up to Evan Williams' land. But this claim was distinctly negatived by the verdict of the jury and the finding of the circuit court; and we are entirely satisfied that it cannot be maintained upon the evidence. The question as to the extent of the rights granted by the lease must be mainly determined upon the testimony of the witnesses Reese and William Owens. The former clearly and positively states that it was only the Watkins works or range which was leased; and his testimony is corroborated by some facts which appear in the testimony of other witnesses. But were it otherwise, we should consider his unsupported statements in respect to the lease as more reliable and entitled to greater credit than the statements of William Owens, who is certainly not so intelligent a witness, and who would be more likely to be mistaken upon the terms of the lease. The learned counsel for the plaintiffs insists that, giving due weight to positive as against negative testimony, it is satisfactorily shown that the lease embraced all of the tract north of the Watkins range, as well as that range proper. But we do not understand that the rule in respect to the effect of positive as against negative testimony applies. The statements of both witnesses are positive in their character; the one that the lease only included what was known as the Watkins work or range, and nothing more; the other that it embraced that range, whatever it might be, and all the rest of the land up to Williams' land. Both witnesses testify as to facts, or in other words as to the real terms of a verbal contract entered into between them. So that we cannot perceive how the doctrine of *Ralph v. The*

*Chicago & Northwestern R'y Co.*, 32 Wis., 178, can have any application.

Independent of the question, then, whether the mine or diggings of the defendants were actually upon the Watkins range, it seems to us it is quite impossible to maintain the position, upon the proofs in the case, that the ground which was being worked by them was originally included in the lease, because no right was given to mine on any land distinct from and separate from that range. This is a fact which we consider to be fully and clearly established by the evidence. We shall enter upon no further examination of the testimony bearing upon the question, but state the conclusion which we have reached in reference to it.

This leads to the inquiry as to what was included in the Watkins range or works, which, it is admitted, were leased to the assignors of the plaintiffs, and upon which their right to mine was exclusive. On that question our opinion is, that the lease of the Watkins range carried with it, or included, the right to take out and appropriate, on the payment of the stipulated rent, all the ores and minerals which might be found in the old works, and also the minerals which should be found in the unbroken ground between the easterly point of the old works and the east line of the tract. We think that this was the extent of the privileges and rights granted by the lease, and that when the east line was reached in following the Watkins range, the plaintiffs' rights terminated. In view of the circumstances surrounding the transaction, it is unreasonable to suppose that any further rights were intended to be granted or secured by the lease. The counsel for the defendants suggests, rather than argues, that the lease only gave the plaintiffs the right to mine on the old Watkins range to the extent to which it had actually been opened and worked, and that it did not confer the right to follow the range to the east line of the forty. But we are unable to adopt that view of the case. We think nothing less than the right to work and prove the Wat-

kins range to the east line of the tract was intended to be granted; and we have little doubt upon the evidence that this was the real understanding of the parties when the verbal lease was entered into.

Nor can we perceive that the plaintiffs' case derives any aid from the statutes regulating the rights of miners (ch. 260, Laws of 1860, and ch. 117, Laws of 1872). These enactments lay down certain rules and regulations which govern mining contracts and leases, when not contrary to the terms established by the landlord, and in the absence of any express agreement fixing the rights of parties. It is unnecessary to dwell upon the various provisions of these acts. The third section, in effect, provides that the person making a discovery of a crevice or range containing ores or minerals, shall be entitled to the ores or minerals pertaining thereto, subject to the rent of the landlord as well before as after such ores or minerals have been separated from the freehold; and he may recover the ores or minerals, or the value thereof, from any miner digging upon his range with notice of his claim. This provision obviously secures to the discoverer the right to develop the range or crevice to the limits of the land on which he has the privilege to mine, and vests in him the title to whatever ores or minerals he may find therein. But how does the provision strengthen the claim or aid the rights of the plaintiffs upon the facts of this case? It is said that the ores or minerals found at the place where the defendants were at work *pertained* to the Watkins range or works, or, in other words that they were taken from that range. But how is that fact ascertained and determined? By the plaintiffs attempting to trace their range several hundred feet around through the adjoining land of Hugh Jones on the east, thence back on to the land of Mr. Dean. But is it at all probable that the parties intended or supposed, when the lease was entered into, that any such rights were conferred by it? The Watkins range, as then known, had a well defined course in a southeast

direction; and we must presume that the parties knew that fact, and contracted with reference to it. And it is quite incredible that they then understood that the right to work the Watkins range carried with it the right to follow that range to the east line of the forty, and, upon permission being obtained, to trace the range through the adjoining tract; and also the further right to follow the range back onto the northeast corner of the Dean tract. The verbal lease should be read in the light of the surrounding circumstances; and if it is, the claim of the plaintiffs will be found unsupported by all the facts and probabilities of the case. If the plaintiffs, while developing their mine on the Dean land, had actually traced the Watkins range to the point where the defendants were at work, and established the identity of the defendants' diggings with the Watkins range, a different question would be presented. There would then be ground for claiming that the ores and minerals mined by the defendants belonged to the plaintiffs and *pertained* to their range. In this remark, however, we do not wish to be understood either as affirming or disaffirming the correctness of the theory of the circuit court, as stated in the conclusions of law. That theory goes upon the assumption that there was a prior discovery of the range or vein on Jones' land while the Watkins range was abandoned and unworked, which restricted the rights of the plaintiffs. This may be so; still our judgment is not placed upon that ground. We think the lease of the Watkins range only gave the right to mine upon that range to the east line of the tract.

We have not overlooked the fact that the Watkins range was what is described by the witness as a "flat opening," the ores being found in a horizontal instead of vertical seam. The limits or borders of this opening on the north are not known, and have never been traced. Possibly, the opening may extend to and include the vein where the defendants are working. But whether it does or not is doubtful and unde-

termined. The plaintiffs do not pretend they have traced the Watkins range by drifting north on the Dean tract up to the defendants' works. They claim that they have established a physical connection between the ores in these works and their own, by following the Watkins range around through the diggings on Jones' land, back again on to Dean's land. But we have already said that the lease of the Watkins range terminated at the east line of the tract, and carried no rights beyond that point.

This is the controlling question in the case, and renders a consideration of the other exceptions unnecessary.

*By the Court.* — The judgment of the circuit court is affirmed.